# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**REMBER Y. MOSCOSO,**

      **Petitioner,**

      v.

**BRIAN COOK, WARDEN,
SOUTHEASTERN CORRECTIONAL
INSTITUTION,**

      **Respondent.**

**CASE NO. 2:19-CV-223
JUDGE SARAH D. MORRISON
Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that the Petition be **DENIED** and this action be **DISMISSED**.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner challenges his convictions after a trial in the Muskingum County Court of Common Pleas on trafficking in drugs and fabrication of a vehicle with a hidden compartment. The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} On April 9, 2017, the Muskingum County Grand Jury indicted appellant on one count of possession of drugs (methamphetamines) in violation of R.C. 2925.11(A), a felony of the first degree. The count was accompanied by forfeiture and major drug offender specifications. Appellant also was indicted on one count of trafficking in drugs (methamphetamines) in violation of R.C. 2925.03(A)(2), a felony of the first degree, with major drug offender and forfeiture specifications and one count of fabrication of a vehicle with a hidden compartment in violation of R.C. 2923.241(C), a felony of the second degree. Because appellant was determined to be indigent, the trial court appointed counsel to represent him. At his

arraignment on August 16, 2017, appellant entered a plea of not guilty to the charges.

{¶ 3} On October 11, 2017, appellant filed a Motion to Suppress Evidence, seeking to suppress "any and all evidence obtained in the course of, as a result of, and subsequent to, the arrest of Defendant and the search of his hotel room..." Appellant argued, in part, that the search of his hotel room was improper due to lack of consent and/or lack of a search warrant. Appellee filed a response to the Motion to Suppress on October 24, 2017. A suppression hearing was held on November 10, 2017.

{¶ 4} At the hearing, Detective Adam Hoskinson of the Licking County Sheriff's Office testified that he was assigned to the Central Ohio Drug Enforcement ("CODE") Task Force. He testified that on July 11, 2017, he was in a marked cruiser when he noticed a vehicle following too close to a gasoline tanker truck in front of it. He testified that the vehicle later changed lanes but did not "signal for at least 100 feet" before it did so. Transcript of November 10, 2017 hearing at 15. Detective Hoskinson testified that he initiated a traffic stop of the vehicle which was a silver Kia Sportage with Illinois plates which had been rented from Enterprise Rent-A-Car in the name of Amber Connor. The following testimony was adduced when he was asked if the registration came back with anything of note to him:

{¶ 5} A: ...[T]he Illinois plate, it came back as a rental vehicle. Rental vehicles have stickers, they are like bar codes on them usually in several places. Typically either the front window, the side passenger window, or on the rear window. I did not see any of these stickers on the vehicle, so that raised a lot of suspicions to me like why is that; and with my training and education, it tells me that a lot of the times the drug traffickers, drug couriers will remove those stickers to make it appear that somebody actually is private ownership of the vehicle to blend in with traffic.

{¶ 6} Q: Okay. Through your training and experience, do drug couriers oftentimes use rental vehicles?

{¶ 7} A: Yes, they like to use rental cars, one, because of the seizure clause, if they get caught. Two, they are dependable cars, you know, they would rather drive a 2016, 2017 car over 2005 or 2010 because they are newer and more dependable, and they blend in better.

{¶ 8} Transcript of November 10, 2017 hearing at 16.

{¶ 9} After he pulled the vehicle over and approached the passenger's side, Detective Hoskinson immediately smelled an "odor, abundant amount of raw marijuana coming from inside the vehicle" Transcript of November 10, 2017 hearing at 16-17. He testified that he could observe marijuana flakes throughout the center console area of the vehicle. The driver of the vehicle, Jose DeJesus Barragan Buenrostro, consented to a search of the same and of his person and had flakes of marijuana on his shirt and pants. The Detective located three hotel key cards to the

Quality Inn in Zanesville, Ohio on Buenrostro's person. A search of the vehicle yielded a Quality Inn hotel receipt for room 324 in the hotel which was in Zanesville, Ohio.

The name on the receipt was appellant Rember Moscoso. A large bag with two or three ounces of suspected marijuana was found in the center console. When he opened up the rear cargo area of the Kia, Detective Hoskinson located a spare tire sitting on the carpeted area and noticed that the lug pattern on the spare tire was for four lugs when the tires on the vehicle had five lugs. Because he was concerned that there could be a hidden compartment in the tire, he examined the tire and saw that there was a rectangular cut with a flap sticking up on the tire. He testified that this was a common way of transporting illegal narcotics or contraband. There was nothing inside the compartment, but a residue of methamphetamine was later found inside the tire. Also in the vehicle, a traffic citation from Oklahoma City that had been issued in the name of Hector Gomez was located. Buenrostro, who did not have a driver's license, was arrested on an outstanding ICE holder and the hidden compartment violation.

{¶ 10} Detective Hoskinson then contacted Detective Mike Patrick with the Zanesville Police Department who is also a Detective with the Zanesville/Muskingum County Drug Unit to follow up with the hotel because he thought that there might be drugs in the hotel room.

Detective Todd Kanavel of the Muskingum County Sheriff's Office who is also an agent with CODE, testified that he followed up with the hotel at the direction of Detective Patrick. He testified that the hotel manager told him that appellant had checked into room 324 on July 8, 2017 but had transferred to room 210 on July 11, 2017 to save money. Detective Kanavel and Detective Patrick then went to room 210 at approximately 3:30 p.m. on July 11, 2017 and knocked on the door. They could hear at least one male voice inside the room talking. Detective Kanavel identified himself and Detective Patrick to appellant and asked to talk to him. Appellant, according to Detective Patrick, invited them into the room. When the Detectives entered the room, they saw Hector Gomez also was in the room laying on the bed. Both Gomez and appellant provided California IDs. Appellant already knew about Buenrostro's arrest and asked if this had anything to with their friend Jose, who had been arrested with the marijuana. The Detectives indicted that it did and appellant said that the marijuana in the car was all that they had, Detective Kanavel testified that both men, when asked indicated that they did not have any drugs or guns in the room and when he asked them individually if they could check through the room for guns and drugs they consented. Approximately $15,000 in U.S. currency was located in a black bag that appellant later identified as his. Appellant stated that the money was used to pay MMA (mixed martial arts) fighters. The two men told Detective Kanavel that they had flown from California into Akron on July 10, 2017 looking for MMA fighters. The Detective, however, knew that this was a lie because they had checked into the hotel on July 8th.

Appellant also claimed that, in Akron, a woman named Amber met them and rented a car for them.

{¶ 11} Detective Kanavel testified that the amount of money found concerned him, so he contacted Detective Romano of the Newark Police Department who was with CODE. He then told the two men that Detective Romano wanted to talk to them and they said that it would not be a problem. Neither man objected to the Detectives remaining in the room while waiting the 30 to 45 minutes that it would take for Detective Romano to arrive from Newark. When Detective Romano arrived, he spoke with appellant and Gomez individually. The two gave conflicting stories about how and when they traveled to Ohio. Both men were then arrested for further investigation into the marijuana that was located in the car. When they were asked if they wanted the Detectives to clear out all of their stuff and put it into bags so that they could get their $250.00 hotel deposit back and have the stuff transported to Licking County along with them, where further investigation was to be conducted, the two men agreed and the Detectives started gathering their belongings. As they were gathering up the belongings, Detective Romano found an unzipped black duffle bag full of methamphetamine under one of the beds that appellant had been sitting on. The methamphetamine was in 13 gallon-size zip lock bags. When asked, he testified that the men never revoked his permission to be in the room or their consent for him to search for anything. Romano testified that in a cabinet behind a microwave, he found a styrofoam coffee cup containing what looked like methamphetamine.

{¶ 12} The trial court, as memorialized in a Journal Entry filed on November 16, 2017, denied the Motion to Suppress, holding, in part, that the occupants of the hotel room gave consent to search the room and that no coercive tactics were used and "no claims of false authority made."

{¶ 13} Thereafter, on November 28, 2017, appellant entered a plea of no contest to possession of drugs and trafficking in drugs and the specifications and the trial court found appellant guilty. The charge of fabrication of a vehicle with a hidden compartment was tried to the bench. No testimony was taken, but rather the parties stipulated to the facts. The parties stipulated that Detective Hoskinson stopped Jose Barragan Buenrostro on July 11, 2017 for a traffic violation and found an altered tire in the cargo section of the vehicle driven by him. They stipulated that the spare tire located in the vehicle did not match the lug pattern on the vehicle and that there was "a purposeful cut ...in the outside of the discovered tire giving access to its interior. Inside the cut tire was methamphetamine residue". Transcript from November 28, 2017 at 48. The parties also stipulated that the Detectives discovered a plastic baggie containing marijuana in the center console of the vehicle and that a baggie was found stowed in the trunk compartment where the spare tire normally would have been. There was a stipulation that "Detectives Hoskinson, Romano, Kanavel, and Patrick would testify that this baggie would match the type characteristics of the baggies of methamphetamine later discovered in Zanesville and for which the defendants have already pled no contest." Transcript from

November 28, 2017 at 49. The parties also stipulated that the phone found on Barragan contained videos containing recorded conversations between Barragan and appellant and Gomez about methamphetamine. The trial court found appellant guilty of the fabrication of a vehicle with a hidden compartment charge.

{¶ 14} Appellant on January 29, 2018, filed a Motion to Waive Mandatory Fine due to indigency. Pursuant to an Entry filed on January 31, 2018, the trial court ordered that for purposes of sentencing, Counts One and Two would merge and appellant would be sentenced under Count Two, and sentenced appellant to a mandatory term of eleven years and imposed mandatory fine of $10,000.00 and to a stated prison term of four years on Count Three. The trial court ordered that the prison sentences be served consecutively with each other for an aggregate prison sentence of 15 years. The trial court also ordered appellant to pay all court costs.

{¶ 15} Appellant now raises the following assignments of error on appeal:

{¶ 16} I. THE TRIAL COURT ERRED BY DENYING MOSCOSCO'S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶ 17} II. MOSCOSCO'S CONVICTION FOR FABRICATION OF A VEHICLE WITH A HIDDEN COMPARTMENT IS BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶ 18} III. THE TRIAL COURT UNLAWFULLY ORDERED MOSCOSO TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITES STATES CONSTITUTION.

{¶ 19} IV. THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING MOSCOSCO TO PAY A FINE, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶ 20} V. THE TRIAL COURT ERRED BY ORDERING MOSCOSO TO PAY COSTS, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES

CONSTITUTION AND SECTION 16 ARTICLE I OF THE OHIO CONSTITUTION.

*State v. Moscoso*, 5th Dist. No. CT2018-0012, 2018 WL 3530823, at *1–4 (Ohio Ct. App. July 19, 2018). The appellate court affirmed the judgment of the trial court, *id*., and the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Moscoso*, 154 Ohio St.3d 1430 (Ohio 2018). On January 22, 2019, Petitioner filed this pro se habeas corpus petition. (Doc. 1).

## II. DISCUSSION

Petitioner asserts that he is actually innocent of the charge of fabrication of a vehicle with a hidden compartment (claim one); and that police lacked probable cause to arrest him (claim two). It is the position of the Respondent that these claims do not warrant relief.

### A. Claim One

Petitioner first claims that he is innocent of the crime of fabrication of a vehicle with a hidden compartment.

#### 1. Actual Innocence

To the extent that Petitioner raises an independent or "free-standing" claim of actual innocence, that claim does not provide him a basis for relief. *See Legrone v. Birkett*, 571 F. App'x 417, 421 (6th Cir. 2014) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation. . . ."); *see also Patterson v. Tibbals*, No. 3:16-cv-098, 2018 WL 3957404, at *4 (S.D. Ohio Aug. 17, 2018) (claim of actual innocence fails to state a claim upon which relief can be granted) (citations omitted). Put simply, Petitioner's claim of actual innocence does not provide him an independent basis for federal habeas corpus relief.

#### 2. Sufficiency of the Evidence

Liberally construing the pleadings, Petitioner also makes a sufficiency of the evidence claim regarding his conviction for fabrication of a vehicle with a hidden compartment. Petitioner argues that there was a lack of evidence indicating that he had any knowledge about drugs in the hidden compartment of the car driven by co-defendant Jose DeJesus Barragan Buenrostro ("Barragan"), a lack of proof of his control over the vehicle, and a lack of evidence indicating that he had placed or assisted anyone else in placing drugs in the car tire. (*Memorandum in Support*, Doc. 1, PAGEID # 45).

Before the state courts, Petitioner argued that the evidence was insufficient to convict him, but presented the claim in a different way. Here is how the state appellate court considered Petitioner's claim:

> {¶ 51} Appellant, in his second assignment of error, contends that his conviction for fabrication of a vehicle with a hidden compartment is based on insufficient evidence.
>
> {¶ 52} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010–Ohio–15, 2010 WL 27862, ¶ 11.
>
> {¶ 53} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 231, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.
>
> {¶ 54} Appellant was convicted of designing or operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241(C). R.C. 2923.241 states, in relevant part, as follows:
>
> (A) As used in this section:

(1) "Controlled substance" has the same meaning as in section 3719.01 of the Revised Code.

(2) "Hidden compartment" means a container, space, or enclosure that conceals, hides, or otherwise prevents the discovery of the contents of the container, space, or enclosure. "Hidden compartment" includes, but is not limited to, any of the following:

(a) False, altered, or modified fuel tanks;

(b) Any original factory equipment on a vehicle that has been modified to conceal, hide, or prevent the discovery of the modified equipment's contents;

(c) Any compartment, space, box, or other closed container that is added or attached to existing compartments, spaces, boxes, or closed containers integrated or attached to a vehicle.

(3) "Vehicle" has the same meaning as in section 4511.01 of the Revised Code and includes, but is not limited to, a motor vehicle, commercial tractor, trailer, noncommercial trailer, semitrailer, mobile home, recreational vehicle, or motor home.

(4) "Motor vehicle," "commercial trailer," "trailer," "noncommercial trailer," "semitrailer," "mobile home," "manufacturer," "recreational vehicle," and "motor home" have the same meanings as in section 4501.01 of the Revised Code.

(5) "Motor vehicle dealer" has the same meaning as in section 4517.01 of the Revised Code.

(B) No person shall knowingly design, build, construct, or fabricate a vehicle with a hidden compartment, or modify or alter any portion of a vehicle in order to create or add a hidden compartment, with the intent to facilitate the unlawful concealment or transportation of a controlled substance.

(C) No person shall knowingly operate, possess, or use a vehicle with a hidden compartment with knowledge that the hidden compartment is used or intended to be used to facilitate the unlawful concealment or transportation of a controlled substance.

{¶ 55} In the case sub judice, there was testimony that a spare tire with a three-sided flap cut into the sidewall was located in the vehicle. It was placed inside the vehicle to make it appear that it was the correct spare tire for the vehicle. The cut, according to the testimony, appeared to be purposeful and not the result of a non-deliberate cause. There was drug residue found inside the tire.

{¶ 56} A spare tire clearly falls under the original factory equipment of a vehicle even though, as noted, the spare at issue was not the actual spare from the Kia in this case. The spare tire to the vehicle in question was removed and replaced with the spare tire that was found in the vehicle. As noted by appellee, "[t]he cut located on the underside of the spare tire in the vehicle was consistent with the creation of a hidden compartment under the statute." The trial court, at the conclusion of the bench trial, stated on the record, in relevant part, as follows:

{¶ 57} THE COURT: The Court does find that the tire specifically is - - does provide a hidden compartment and is the hidden compartment as stated in 2923.241 (2) and (B) says any original factory equipment on the vehicle that has been modified to conceal, hide, or prevent the discovery of modified equipment's contents. Clearly, the methamphetamine or drugs were placed inside that they modified with the slices, it was intended to hide the drugs inside.

Because the tire was sitting on top of the spare tire area doesn't mean that tire wasn't designed - - that tire still was designed to conceal the drugs.

And based upon that, I find you guilty of Count 3 also.

{¶ 58} Transcript from November 28, 2017 at 80.

{¶ 59} Based on the foregoing, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly operated, possessed, or used a vehicle with a hidden compartment with knowledge that the hidden compartment was used or intended to be used to facilitate that unlawful concealment or transportation of a controlled substance,

*State v. Moscoso*, 2018 WL 3530823, at *7–8.

Given this posture, Respondent argues that Petitioner has waived his claim of insufficiency of the evidence for this Court's review. For the reasons that follow, the Undersigned agrees.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied*, 509 U.S. 907 (1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99 (1995); *Riggins v. McMackin*, 935 F.2d 790, 792 (6th Cir.

1991). A petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts underlying the constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Thus, a petitioner must present to the state courts both the legal theory and factual basis of any claim that he or she seeks to present in habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Gray v. Netherland,* 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz*, 824 F.2d 494,496 (6th Cir. 1987). If a petitioner did present the substance of his or her claim to the state courts, "an elaboration of the facts or legal theories will not result in a new claim." *Nichols v. Bell*, 440 F. Supp. 2d 730, 755 (E.D. Term. 2006) (citing *Jones v. Washington*, 15 F.3d 671, 674-75 (7th Cir. 1994)). But if the presentation of additional facts or arguments "fundamentally alter the legal claim already considered by the state courts," then the petitioner cannot be said to have fairly presented that component of the claim. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *Richey v. Bradshaw*, 498 F.3d 344, 352 (6th Cir. 2007). Although the fair presentment requirement is a rule of comity and not jurisdiction, *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.

Here, the record indicates that Petitioner asserted on direct appeal that the evidence was constitutionally insufficient to sustain his conviction because the tire police found in the car was not hidden, as required under O.R.C. § 2923.241, but in plain view in the cargo area. (Doc. 9, PAGEID # 163). Petitioner additionally argued:

> More importantly, the tire was not "integrated into the vehicle," as the statute requires. . . . [T]here was no way to even integrate the tire into the vehicle because the tire "did not match the lug pattern on the vehicle."

10

(*Id*.) He made no other arguments in support of his claim of insufficiency of the evidence. Now, in contrast, Petitioner argues that the State failed to prove that he had any knowledge about the tire in the car and its hidden compartment or any connection to the tire or drugs located therein. This claim of insufficiency of the evidence relies on an entirely different basis than the one he raised in state court. Further, "[p]resenting [] claims under the same legal umbrella but with entirely different factual underpinnings []does not constitute fair presentation to the state courts." *Lott v. Coyle*, 261 F.3d 594, 618 (6th Cir. 2001) (holding that petitioner's presentation of a *Brady* claim does not permit him to put forward on habeas corpus review other *Brady* claims predicated on factually dissimilar premises) (quoting *Landano v. Rafferty,* 897 F.2d 661 (3d Cir. 1990); *see also Wolff v. Tibbles*, No. 4:11-CV-454, 2014 WL 2694227, at *13 n.7 (N.D. Ohio June 13, 2014) (petitioner waived insufficiency of the evidence argument that differed from what he raised in the Ohio Court of Appeals); *Cutts v. Smith*, No. 5:11-cv-00991, 2013 WL 2152143, at *20 (N.D. Ohio May 17, 2013) (petitioner waived his claim of insufficiency of evidence by failing to present it in the same manner in the state courts and on federal habeas corpus review); *Maze v. Lester*, 564 F. App'x 172 (6th Cir. 2014) (In the "context of ineffective assistance of counsel claims, 'to the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts.'") (citing *Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir. 2003)).

> When a petitioner raises different factual issues under the same legal theory he is required to present each factual claim to the highest state court in order to exhaust his state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 1732–33, 144 L.Ed.2d 1 (1999) (holding that exhaustion requirement mandates presentation of all claims to state court through discretionary review process). *See also Pillette v. Foltz*, 824 F.2d 494, 497–98 (6th Cir. 1987). He has not exhausted his state remedies if he has merely presented a particular legal theory to the courts, without presenting each factual claim. *Pillette*, 824 F.2d at 497–98. The claims must be presented to the state courts as a matter of federal law.

11

*Alley v. Bell*, 101 F.Supp.2d 588, 613 (W.D. Tenn. Jan. 18, 2000). "[T]he fair presentment requirement is not satisfied where a petitioner presented to the state courts a claim that shares a factual predicate with, but is legally or analytically distinct from, the claim that petitioner seeks to present to the federal courts." *Brown v. Rodgers*, No. 1:99-cv-549, 2015 WL 1468732, at *12 (S.D. Ohio March 30, 2015). "'[T]he same claim under the same theory' must be presented to the state courts before it can be considered in a federal habeas petition." *Id.* at *13 (citing *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)).

In addition, the fact that Petitioner argued before the Supreme Court that the State failed to prove he had control over the vehicle or knowledge about the tire does not save his claim. (Doc. 9, PAGEID # 240). This is so because the Ohio Supreme Court will not ordinarily consider claims not made in the appellate court below. *See Teitelbaum v. Turner*, 2018 WL 2046456, at *16 (S.D. Ohio May 2, 2018) (recognizing procedural default of claim not raised in appellate court below) (citing *Jones v. Warden, Lebanon Corr. Inst.*, No. 2:14-cv-01218, 2015 WL 7829145, at *1 (S.D. Ohio Dec. 4, 2015) (internal citations omitted). Finally, Petitioner has failed to establish cause for this failure. In sum, the claim is waived.

### B. CLAIM TWO

In claim two, Petitioner asserts that police lacked probable cause to arrest him and illegally searched his hotel room without a warrant. This claim likewise does not assist him. "[I]t is well-settled that an alleged violation of a defendant's Fourth Amendment rights is not cognizable on habeas review when the defendant had a full and fair opportunity to litigate the claim in state court." *Kennedy v. Nagy*, No. 18-1463, 2018 WL 3583212, at *2 (6th Cir. July 12, 2018) (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)). "The 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his [or her] claim to the state courts[.]" *Good*

*v. Berghuis*, 729 F. 3d 636, 639 (6th Cir. 2013). "[I]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id*.

Here, Petitioner presented his Fourth Amendment claims to the trial court in his motion to suppress and later raised a claim under the Fourth Amendment on direct appeal. This is sufficient to preclude habeas review even if Petitioner alleges that the state courts reached the wrong result on the suppression determination. *Hillman v. Beightler*, Case No. 5:09–CV–2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010) (citing *Cabrera v. Hinsley*, 324 F.3d 527, 531–32 (7th Cir. 2003) (explaining that a full and fair opportunity to litigate guarantees the right to present a case, but it does not guarantee a correct result)). Claim two does not provide a basis for relief.

## III. RECOMMENDED DISPOSITION

It is **RECOMMENDED** that the Petition be **DENIED** and this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report

and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

Date: August 20, 2019                                          /s/ Kimberly A. Jolson
                                                                                     KIMBERLY A. JOLSON
                                                                                     UNITED STATES MAGISTRATE JUDGE